**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON**

**CIVIL ACTION NO. 06-44-JBC**

**JUDITH GROSE,**                                                                                             **PLAINTIFF,**

**V.**                              **MEMORANDUM OPINION AND ORDER**

**BANK ONE, N.A.,**                                                                                           **DEFENDANT.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the defendant's motion for summary judgment (DE 33). The court, having reviewed the record and being otherwise sufficiently advised, will grant the motion in part and deny it in part.

**I.      Factual Background**

Plaintiff Judith Grose was an employee of defendant, JPMorgan Chase Bank, N.A., a successor by merger to the named defendant, Bank One, N.A. (hereinafter "Chase"), for twenty-seven years until her termination on August 10, 2004. During her tenure at Chase, Ms. Grose rose to the position of Assistant Banking Center Manager ("ABCM") for the Northland Branch of Chase in Lexington, Kentucky, a position she held for twenty-one years until the time of her termination. Her immediate supervisor was Jim Vanderwerf, the Banking Center Manager ("BCM"). In addition to Mr. Vanderwerf's supervising Ms. Grose, both were supervised by Dallas Polk, the District Manager. DE 40-1, at 4-5.

At the end of 2003, Ms. Grose was sick for several months with back and

1

stomach problems and, in early 2004, Ms. Grose was diagnosed with severe endometriosis and cancer cells were detected on her reproductive organs. Ms. Grose had surgery on February 2, 2004, and applied for and took leave under the Family Medical Leave Act, 29 U.S.C. §§ 2601-2654 ("FMLA"). In March 2004, Ms. Grose's condition deteriorated, resulting in a hysterectomy, and she was placed on hormone therapy to address resulting hormonal imbalances which Ms. Grose claims caused physical and emotional problems. During the period of her leave, she kept Mr. Vanderwerf informed about the status of her health problems and her need for continued leave. DE 40-1, at 4. While Ms. Grose was on leave, Cheryl Standafer, a Regional Field Operations Manager with Chase, conducted a "mock audit" in March 2004. Ms. Standafer informed Ms. Grose that the audit did not reveal any problems with the workings of the branch before she left in February 2004. Ms. Grose returned from FMLA leave in April 2004 and, to ease the return to work, she sought and received a reduced work schedule as an accommodation for a month, thereafter returning to her usual work schedule of "approximately 50 to 60 hours per week." DE 33-2, at 3, 5-6.

The tellers at Chase's Northland Branch reported to Ms. Grose as ABCM and she also supervised the "operational controls" aspect of the bank's operations in the branch. DE 33-2, at 2. In early August 2004, while Ms. Grose was on vacation, Chase conducted a surprise audit of the Northland Branch with Julie Ruble as the auditor. According to Ms. Ruble, her interviews with Chase

employees revealed that tellers at the Northland Branch circumvented bank policies which mandated the use of the vault to store cash shipments. Instead of using the vault, which at times – including times when many customers were at the branch requiring the attention of the tellers – could require two tellers, employees locked the funds in a wall credenza drawer behind the teller line, with the key to the drawer kept in another unlocked drawer. Ms. Ruble called Ms. Grose to ask whether she knew about the use of the drawer. Ms. Grose answered the question in the affirmative. According to Ms. Grose, she was distracted and misunderstood Ms. Ruble's question. Ms. Grose denies that she knew the tellers used the drawer instead of the vault for cash shipments. DE 33-2, at 4-8.

Following the audit, Ms. Ruble filed a written report. Ms. Grose does not deny the report's findings of violations of Chase policy and procedure. After the report, Chase terminated Ms. Grose. The individuals involved in the decision to terminate Ms. Grose were District Manager Dallas Polk, Market Manager Jay Wells, and Bill Blue from the Human Resources department at Chase. Mr. Vanderwerf was also placed on "final written warning," which represents the final step of Chase's progressive disciplinary procedure. DE 33-2, at 8. A female was hired to replace Ms. Grose as ABCM. DE 45, at 6.

On February 2, 2006, Ms. Grose brought this action against Chase claiming retaliation under the FMLA; gender discrimination under the Kentucky Civil Rights Act, KRS 344.040 ("KCRA") and Title VII of the Civil Rights Act of 1964, 42

3

U.S.C. § 2000e *et seq.* ("Title VII"); and disability discrimination under the KCRA and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA").  DE 1-1.

## II.     Standard of Review

"Summary judgment is proper where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law." *Browning v. Levy*, 283 F.3d 761, 769 (6th Cir. 2002) (citing Fed. R. Civ. P. 56(c)). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp.*, 477 U.S. at 323.  In deciding the motion, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party.  *Id.*  A judge is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  A genuine issue exists only when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Browning*, 283 F.3d at 769 (quoting *Anderson*, 477 U.S. at 252).

## III.    FMLA Retaliation Claim

The three-step process set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to FMLA retaliation claims relying on "indirect evidence" such as temporal proximity.  *Skrjanc v. Great Lakes Power Service Co.*, 272 F.3d 309, 315 (6th Cir. 2001).  Those three steps are as follows: (1) a plaintiff must

prove a prima facie case of discrimination; (2) the defendant must then articulate a legitimate, nondiscriminatory reason for discharging the defendant; and (3) the plaintiff must then show the articulated reason is merely a pretext. *Id.* A plaintiff "can make out a prima facie case of discrimination by showing that (1) she availed herself of a protected right under the FMLA by notifying [her employer] of her intent to take leave, (2) she suffered an adverse employment action, and (3) that there was a causal connection between the exercise of her rights under the FMLA and the adverse employment action." *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 508 (6th Cir. 2006). The defendant contests only the third prong of the prima facie case. DE 33-2, at 17-18.

Whether a plaintiff has made out a prima facie case is a matter for the court to decide. *See Skrjanc*, 272 F.3d at 314-15. The plaintiff asserts a causal connection between Ms. Grose's leave of absence and her termination by relying on temporal proximity between the two events and also cites some additional evidence. Temporal proximity alone may create a genuine issue of material fact as to whether a causal connection exists upon which a reasonable jury could rely where the jury also weighs other evidence such as "the credibility of Defendant's proffered reason for termination, the demeanor of witnesses on the stand, and the evidence of Plaintiff's prior work habits." *Chandler v. Specialty Tires of America (Tennessee), Inc.*, 283 F.3d 818, 826 (6th Cir. 2002) (citing *Skrjanc*, 272 F.3d at 314, 317). "'[P]revious cases that have permitted a prima facie case to be made

5

based on the proximity of time have all been short periods of time, usually less than six months'" and combined with some "other evidence of causation." *Nguyen v. City of Cleveland*, 229 F.3d 559, 566-67 (6th Cir. 2000) (citing *Parnell v. West*, 1997 WL 271751, at *3 (6th Cir. 1997)).  "[T]o establish the element of causal link a plaintiff is required to proffer evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action" but "the burden is minimal, requiring the plaintiff to put forth some evidence to deduce a causal connection between the retaliatory action and the protected activity and requiring the court to draw reasonable inferences from that evidence, providing it is credible." *E.E.O.C. v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997) (internal citations and quotation marks omitted).

The plaintiff was terminated when she returned from her vacation on August 9, 2004, less than four months after her return from FMLA leave on April 19, 2004.  Before her termination, she had been employed by Chase for twenty-seven years and for twenty-one years she had been an ABCM.  Moreover, Mr. Vanderwerf conceded that the plaintiff's FMLA leave had caused problems at the branch.  DE 40-1, at 10-11.  The jury could rely on the plaintiff's prior years of service to infer the quality of her work and assess the credibility of the defendant's witnesses who claim the plaintiff was discharged for a legitimate business reason.  Therefore, the plaintiff has made out a prima facie case of FMLA retaliation.

**IV.    Gender Discrimination**

The KCRA "is modeled after, and is virtually identical to, Title VII," and "Kentucky courts have, therefore, followed federal law in interpreting its anti-discrimination statute." *Mills v. Gibson Greetings, Inc.*, 872 F. Supp. 366, 371 (E.D. Ky. 1994). Therefore, the analysis is the same for both the plaintiff's federal and state gender discrimination claims.

A burden-shifting analysis similar to that for the FMLA claim applies to the plaintiff's gender discrimination claims. First, the plaintiff must make out a prima facie case by showing:

> (1) she is a member of a protected class; (2) she was discharged; (3) she was qualified for the position which she held; and (4) she was replaced by a person outside the protected class or, in the alternative, that a comparable person outside of the protected class was treated more favorably than the plaintiff.

*Id.* at 369. The defendant does not contest the first three prongs. DE 33-2, at 10. As to the fourth prong, the parties disagree whether Mr. Vanderwerf qualifies as a "comparable person."

A plaintiff in an employment discrimination action must prove "that all of the relevant aspects of his employment situation were 'nearly identical' to those of [the purported comparable person's] employment situation." *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994). For two employees to be "'similarly situated' in the disciplinary context," it is "generally relevant" if "'the individuals with whom the plaintiff seeks to compare his/her treatment . . . have dealt with the same supervisor, have been subject to the same standards and have

7

engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992)). "Courts should not assume, however, that the specific factors discussed in *Mitchell* are relevant factors in cases arising under different circumstances, but should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee." *Id.*

The plaintiff argues that Mr. Vanderwerf, who was not terminated after the August 2004 audit of the Northland Branch for which the plaintiff was terminated, is a "similarly situated" individual outside the protected class. The court, however, finds the plaintiff was not similarly situated to Mr. Vanderwerf because he was her supervisor and had different duties. While he did assume her duties while she was on leave and while they had a "peer relationship" on the job, *see* DE 40-1, at 13, Mr. Vanderwerf's duties as BCM, including overseeing the platform side of the branch and overseeing the operations side of the branch while the plaintiff was on leave, were more expansive than those of the plaintiff as ABCM. DE 45, 8; DE 39, 2-3. Therefore, all the relevant aspects of the respective employment situations of the plaintiff and Mr. Vanderwerf were not "nearly identical" because Mr. Vanderwerf's duties were significantly more expansive than the plaintiff's, especially on the day of the August 2004 audit when he was doing both his job

and the plaintiff's.  Consequently, the plaintiff has not made out a prima facie case of gender discrimination under Title VII and the KCRA.

**V.    Disability Discrimination**

Regarding the KCRA's disability discrimination provisions, "[t]he Kentucky Civil Rights Act was modeled after federal law, and [Kentucky] courts have interpreted the Kentucky Act consistently therewith."  *Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 592 (Ky. 2004).  Therefore the analysis for the KCRA and ADA disability discrimination claims is the same.

The *McDonnell Douglas* burden-shifting analysis applies to claims under the ADA, and thus the KCRA, just as it applies to FMLA and gender discrimination claims.  *Sullivan v. River Valley School District*, 197 F.3d 804, 810 (6th Cir. 1999).  In order to make out a prima facie case of discrimination under the ADA/KCRA, a plaintiff must show "that he is (1) a disabled person within the meaning of the [ADA], (2) that he is otherwise qualified to perform the essential functions of his job with or without reasonable accommodation, and (3) that he suffered an adverse employment decision due to his disability."  *Id.*

A disabled person is defined by the ADA/KCRA "as one who (1) has a physical or mental impairment that substantially limits one or more of the major life activities of such individual, (2) has a record of such impairment, or (3) does not have an impairment, but is regarded as having one."  *Id.*  The plaintiff alleges health problems resulting from her hysterectomy disabled her by causing "a mental or

9

physical impairment which limits one or more of her major life activities." DE 40-1, at 16. Specifically, the plaintiff points to "[t]he substantial impact the resulting hormonal problems had on her ability to self-confidence [sic] and maintain emotional stability." DE 40-1, at 17. As support for this claim, the plaintiff points to difficulties during her initial return to work after her hysterectomy, including a conversation with Mr. Vanderwerf during which she was crying due to hormonal problems. DE 33-7, at 22-24. The plaintiff was subsequently allowed to work a reduced schedule. DE 33-7, at 24. Because she cannot specify a "major life activity" significantly limited by her hormonal problems beyond a few episodes just after her return to work, the plaintiff is not disabled under the ADA or the KCRA due to unspecified "hormonal problems."[1]

Therefore, the plaintiff has not made out a prima facie case of disability discrimination on the basis of an impairment limiting a major life activity. Summary judgment is appropriate as to the plaintiff's disability discrimination claims under the KCRA and ADA.

## VI. Pretext

"[M]aking out a prima facie case does not automatically save [Grose] from a summary judgment motion. Indeed, the inference of discrimination created by the

---

[1] In deposition, the plaintiff also stated that she had trouble sleeping as a result of her hysterectomy but this argument also fails to demonstrate a disability because she had been taking sleeping medication for years to help her sleep through her teeth grinding and she did not alter her regimen of medication after the surgery. DE 33-6, 21-27.

prima facie case is dispelled once the employer's reason is stated, until and unless the latter is shown to be a pretext." *Canitia v. Yellow Freight System, Inc.*, 903 F.2d 1064, 1067-68 (6th Cir. 1990). The defendant has articulated a non-pretextual, legitimate business reason for terminating Grose's employment by alleging the plaintiff "was terminated from employment for performance issues revealed in the 2004 audit of the Northland Branch." DE 40-1, at 17. Moreover, "[t]he jury may not reject an employer's explanation . . . unless there is a sufficient basis *in the evidence* for doing so." *Id.* (emphasis in original). The test for finding an employer's explanation "'unworthy' of belief" is disjunctive: "'(1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate his discharge, or (3) that they were *insufficient* to motivate discharge.'" *Id.* (citing *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 523 (7th Cir. 1993)) (emphasis added and quotation marks omitted by the Sixth Circuit).

Because the plaintiff has made out a prima facie case only for an FMLA retaliation claim, pretext will be considered only as to that claim. At the heart of the defendant's defense of its stated reasons for the termination of the plaintiff is its reliance on the findings of Ms. Ruble's audit, including Ms. Ruble's account of her telephone conversation with the plaintiff. The plaintiff states her understanding of their telephone conversation was not the same as Ms. Ruble's. DE 45, at 10-11. Moreover, there is evidence in the record that during the plaintiff's FMLA

11

leave, Mr. Vanderwerf was "concerned" about her absence from work during key periods and other employees noted she was "missing a lot of days." DE 40, 19. Such statements could support a finding by a reasonable jury that the stated reasons for the plaintiff's discharge were mere pretext for an unlawful decision to terminate her because they either had no basis in fact or were insufficient to motivate the discharge of an employee who had been an ABCM for all but six of her twenty-seven years with the defendant and who was terminated only four months after taking FMLA leave.

**VII. Conclusion**

Accordingly,

**IT IS ORDERED** that the defendant's motion for summary judgment (DE 33) is **GRANTED IN PART** and **DENIED IN PART** in accordance with this memorandum opinion and order. This case will proceed on the FMLA retaliation claim alone.

Signed on  March 3, 2008

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCY